UNPUBLISHED

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

HELEN BROWDER; BOBBY BRYANT;
JESSIE EDWARDS,

> *Plaintiffs-Appellants,*

v.

THE UNITED STATES DEPARTMENT OF
EDUCATION; SOUTH CAROLINA
COMMISSION FOR THE BLIND; NELL C.
CARNEY, Commissioner of the South
Carolina Commission for the Blind,

> *Defendants-Appellees.*

No. 99-2290

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-98-1982-3-10)

Argued: September 27, 2000

Decided: November 20, 2000

Before WILKINSON, Chief Judge, and NIEMEYER and
LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

### COUNSEL

**ARGUED:** Robert Ogilvie Meriwether, NELSON, MULLINS,
RILEY & SCARBOROUGH, Columbia, South Carolina, for Appel-

lants. Robert Russell Humphreys, Washington, D.C., for Appellees.
**ON BRIEF:** John F. Kuppens, NELSON, MULLINS, RILEY &
SCARBOROUGH, Columbia, South Carolina, for Appellants. Nathan
Kaminski, Jr., Senior Assistant Attorney General, Columbia, South
Carolina; Frances C. Trapp, OFFICE OF THE UNITED STATES
ATTORNEY, Columbia, South Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

## OPINION

PER CURIAM:

The United States District Court for the District of South Carolina
held, on motion for summary judgment, that a federal arbitration
panel's decision that the Savannah River Site constituted multiple
"Federal properties" for purposes of the Randolph-Sheppard Act, 20
U.S.C. §§ 107-107e, was not "arbitrary, capricious, an abuse of dis-
cretion, or otherwise not in accordance with law," 5 U.S.C.
§ 706(2)(A). For the reasons that follow, we affirm.

I.

Appellants are three blind individuals who were or are currently
licensed as blind vendors at the Savannah River Site ("SRS"), J.A. 89,
a 320 square mile federal facility in Aiken, South Carolina, J.A. 65.
Along with other blind vendors, appellants were awarded lucrative
vending routes at SRS pursuant to the provisions of the Randolph-
Sheppard Act (the "Act"). J.A. 78. The South Carolina Commission
for the Blind ("SCCB"), the state licensing agency charged with
administering the Act in South Carolina, in conjunction with the
Department of Energy, the federal property manager, established five
such vending routes for blind vendors at SRS. J.A. 64, 70-71. Each
vending route granted the blind vendor control and responsibility over
a number of vending machines spanning several buildings (or parts

thereof) at SRS. J.A. 69. Each appellant was aware when he was awarded a vending permit that his income was limited to the amount generated on his vending route. J.A. 74-75, 77-78.

Non-blind vendors also operated vending machines at SRS. J.A. 73. Under the Act, blind vendors are entitled to receive 50% of the income from vending machines with which they are in indirect competition if the machines are located on the same "Federal property." *See* 20 U.S.C. § 107d-3(b)(1); 34 C.F.R. § 395.32(c). If no blind vendor operates on a "Federal property," then 50% of the income from non-blind vendors operating on the property is distributed to the state licensing agency for the benefit of all blind vendors in the state. 20 U.S.C. § 107d-3(a); 34 C.F.R. § 395.32(c). Consequently, from 1990, which marked the beginning of the blind vendor program at SRS, until 1993, half of the profits generated from the vending machines operated by non-blind vendors accrued to SCCB. J.A. 82. These profits were then used by SCCB to benefit all blind vendors in the state. J.A. 82.

In 1993, a state auditor wrote a letter to the Rehabilitative Services Administration ("RSA"), the federal agency charged with responsibility for the Act, to confirm whether monies collected from non-blind vendors were being distributed in accordance with the Act. J.A. 32-33. RSA ultimately concluded that SRS could comprise more than one "Federal property" under the Act. J.A. 87. Appellants sought relief from SCCB, but the state hearing officer determined that she lacked jurisdiction to consider the federal statutory and regulatory issues presented. J.A. 51. Appellants then sought review from an arbitration panel convened by the Secretary of Education. The panel ruled that SCCB had not violated the Act in treating SRS as more than one "Federal property," and that the vending routes at SRS constituted separate and distinct federal properties. J.A. 102. The district court granted summary judgment to the appellees on appellant's petition for review of the arbitration panel's decision.

II.

The underlying arbitration panel decision we review today is deemed a final agency action under the Administrative Procedures Act ("APA"). *See* 20 U.S.C. § 107d-2(a). Under the APA, we must

uphold that decision if it is supported by "substantial evidence," and is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), (E). In determining whether final agency action violates section 706(2)(A) of the APA, "we perform 'only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes,' and whether the agency has committed 'a clear error of judgment.'" *Maryland Dep't of Human Resources* v. *United States Dep't of Agriculture*, 976 F.2d 1462, 1475 (4th Cir. 1992) (quoting *Baltimore Gas & Elec. Co.* v. *Natural Resources Defense Council, Inc.*, 462 U.S. 87, 97 (1983), and *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U.S. 402, 416 (1971)).

Appellants contend that appellees were not entitled to summary judgment because the plain language of the Act requires a determination that SRS is a single "Federal property" and that, therefore, appellants are entitled to all the monies received by SCCB as the proceeds of indirect competition under 20 U.S.C. § 107d-3(b)(1). We conclude that that contention fails, however, because the arbitration panel's decisions that SRS may permissibly be divided into multiple "Federal properties" and that SRS is properly so divided, are neither arbitrary and capricious nor unsupported by substantial evidence.

The Act defines "Federal property" as

> any building, land, or other real property owned, leased, or occupied by any department, agency, or instrumentality of the United States (including the Department of Defense and the United States Postal Service), or any other instrumentality wholly owned by the United States, or by any department or agency of the District of Columbia or any territory or possession of the United States.

20 U.S.C. § 107e(3). It is almost inconceivable that "Federal property" could be defined more broadly, as counsel for appellants candidly conceded at argument. Literally, *any* building, *any* parcel of land, or *any* other piece of real property constitutes, under this definition, "Federal property" (provided, of course, that it is owned, leased, or occupied by a federal entity). Routes of the kind at issue in this case are, at the very least, parcels of land or other real property occu-

pied by the federal government, thus satisfying the statutory definition. Accordingly, we cannot conclude that the arbitration panel's determination that SRS is, as a statutory matter, permissibly divisible into smaller subdivisions, such as routes or buildings, in any sense arbitrary and capricious. Each of these routes may constitute a separate "Federal property" without offense to the statutory definition chosen by Congress.

In their submissions and especially at argument, appellants — perhaps shrewdly, perhaps not — argue that SRS, and by extension every similar "site," must be deemed a single "Federal property." For this argument, appellants do not even offer a definition of "site," which would be necessary in order for the argument to make any sense at all; much less do they attempt to reconcile any such definition of the term "site" with the definition expressly enacted by Congress. But, at the end of the day, "site" is not the statutory definition of "Federal property" we interpret anyway (and even if it were, it would not follow, as appellants contend, that the routes drawn by the SCCB would fail the definition of "Federal property"). Rather, as noted, that definition is "any building," "any land," or "any other real property." As a matter of statutory interpretation, this definition comfortably, and we believe indisputably, reaches routes of the kind in question.

The only remaining question is whether substantial evidence supports the panel's decision that the particular vendor routes challenged here are properly considered separate "Federal properties." And we are satisfied that substantial evidence does support this decision. As the arbitration panel first acknowledged, SRS is a massive site that is divided into at least "thirteen distinct facilities or populated areas" that "are essentially self-sufficient and self-contained." J.A. 66. "Each of the five routes or areas was configured to take advantage of the location of particular buildings and vending machines, as well as the population concentrations in the various letter-designated industrial areas." J.A. 70. And these routes were created because SRS can be naturally divided, and each division can provide satisfactory income for blind vendors. J.A. 70-71. This evidence, gleaned over the course of a two-day hearing, from numerous exhibits and witnesses and an

extended site visit to SRS, amply supports the arbitration panel's conclusion. J.A. 270.*

## *CONCLUSION*

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*

---

*Appellants seek additional discovery to supplement the administrative record. In general, however, judicial review of agency action is limited to the administrative record. *See Camp* v. *Pitts*, 411 U.S. 138, 142 (1973). The district court correctly determined that "there are no additional facts required to conduct a review of the administrative record in this case." J.A. 270. In light of the extensive administrative record and appellants' failure to seek additional discovery before the arbitration panel, the district court did not abuse its discretion in denying appellants' motion for additional discovery.